Good afternoon, everyone. I'm Justice Aurelia Patinsky and we are in the 1st District of the Illinois Appellate Court First Division. Today, we're hearing case number 1-21-0322, Anne Catherine McGoey Plainer v. Betsy Brace, Herb Lesser, Edwards, Johnson, and Mizell. Counselor, if you could introduce yourselves, please. Eurus Kitt on behalf of the appellants, David Lesser, Helen Lesser, and I have Ginny Marziani, also counsel for the Lessers in the room with me. Okay, great. And Mr. Canning? Good afternoon, Your Honors. Christopher Canning on behalf of Betsy Brace. All right, fine. Can we find out how much time do you need? I think 20 minutes and reserving five minutes or three minutes for rebuttal. Okay, 20 plus five? No, I think if I have 20 plus five, that's fine, but I don't think I'll need that, but I understand or was led to believe that I have 20 minutes total and the rebuttal has to be part of that time and that's why I wanted to reserve at least three minutes. Okay, all right. Great. Mr. Canning? You'll take your whole 20? I will, Your Honor. I hope to wrap it up sooner than that. Okay, great. Let's begin. Good afternoon. May it please the court. As I said, my name is Eurus Kitt and I represent the appellants, David Lesser and Helen Lesser. This is an appeal from an order granting appellee Betsy Brace's motion to enforce a settlement agreement that was entered into 10 years ago in this 2006 case, which was dismissed in 2012. Our motion, Lesser's motion to dismiss the motion, the case for lack of jurisdiction, was denied and the motion to enforce to build a parking pad pursuant to the settlement agreement was granted. We think these two decisions were errored and should be reversed. As a policy matter, Judge Riley's motion for an order denying our motion to dismiss is not reversed. This will lead to ambiguity and in fact will take formality out of Section 1203 of the Code of Civil Procedure. Also, it supports forum shopping, judge shopping, to be more specific. This court can reverse. Judge shopping because I think their argument is that everything was supposed to go back to either Justice Hyman or his, Judge Hyman or his successor. So, I don't know where you get the judge shopping from there. Well, they in fact are contracting for a judge. They have agreed to a judge. And I don't think there's any case law that supports the parties by contract can agree, let's have Judge Hyman decide this controversy. But all the agreed order was basically pursuant to the dismissal of the case. And then there was an agreed order entered that simply said that we would go back to the same judge to enforce this particular order. And realizing that that same judge could be retired or for whatever reason just no longer on the court. Therefore, you're just simply saying that we're going to go back to the same calendar. I don't think it was the same judge necessarily. It was the same calendar was the idea. There was no order entered to that effect, Your Honor. The Judge Hyman dismissed this lawsuit in October 2016, 2012 rather, saying this is a final order. And it disposes of the matter in its entirety. He did not agree or there was no consent order entered that he will hear this dispute. The settlement agreement was not included in that order. And what they're doing now is they're relying not on the court order to go before Judge Hyman or successor to Judge Hyman. Rather, they're relying on a private contract between the parties. What their argument is anyway, is that they're relying on the court's inherent authority to enforce court orders. Well, I don't make sure the court has inherent authority, but at some point in time, the court loses jurisdiction for inherent authority. If you follow counsel's argument, they could agree to go before Judge Hyman, and that could be 20, 30 years down the line. So that's not the inherent authority of the court. Counsel, didn't your client agree to this same language that you're complaining about now? Yes, they signed the settlement agreement, but that's still a private party to a contract. Even if the client agreed... Doesn't it sound a bit disingenuous? I don't think so. If the client did agree, basically, to have it go before Judge Hyman, it would still be a private contract between private parties. And sure, they agreed to it, but I think it has no force. After the case was dismissed, without retaining jurisdiction of this matter, without incorporating the terms of the settlement... That kind of sounds like maybe there was some bad lawyering here, but the intent of the party seems pretty clear to me from reading the documents. Well, that's true, Your Honor, but I don't think that's relevant. I don't think that's the issue. You're saying the intent of the parties, we can agree then in a private contract that we'll go before Judge Atkins to hear our dispute. But I think, like Justice Walker just articulated, I think the intent was to go to the calendar. Clearly, Justice Hyman is no longer there, so you're never going to go back to him. No, but I don't see that there's any difference when you see Judge Hyman or his successor calendar still choosing a judge. In a case that was dismissed 10 years ago with no retention of jurisdiction, and there simply is no case. Brace has not cited a case that says that kind of provision can be enforced. So basically, there are judges, and the court can retain jurisdiction in certain circumstances, but this is not one of them. This is a private contract between parties, between litigants, saying we're going to go before Judge Atkins or Judge Jones or Judge Walker to fight our dispute. And there simply is no authority for that. Section 1203 says the court loses jurisdiction 30 days after the final order is entered. Okay, there's a provision that two years can come in and so forth and so on, but that's all governed by our rules of Code of Civil Procedure. Okay, there's no doubt that a judge retains jurisdiction to enforce an order. We all agree on that. We agree on that if the order states that he shall retain jurisdiction to enforce it, and that simply wasn't the case here. I think the cases say inherent authority, I don't think they say it has to be written down someplace in an order. Well, Judge, Judge Hyman on October 26, 2012, when he dismissed the case that basically the settlement agreement was binding on the parties and that the case is dismissed in its entirety. And there was no retention of jurisdiction at all. He said, yeah, that's, that was his ruling. There was no, no retention saying I retain jurisdiction to enforce this. What about his inherent authority to enforce it. Well, I think there are limits, and I think inherent authority might be in cases, wait, wait, if you're, if you're saying that he doesn't have inherent authority to enforce an order. Then, after the order is entered, and it gets screwed up. Then, what you're saying is, no one can enforce it. Oh, he can. I'm sorry, Judge, he can't. But there's nothing for him to enforce in this order. That's the thing. Well, it's his order. He didn't compel anything to be done, other than the parties to sign the agreement. He compelled them to agree with the settlement agreement. He said, there's a settlement agreement. Great. Let's do this. The issue, Judge, the issue was raised, whether the settlement agreement reflected the oral agreement of the parties that was reached during the pretrial proceedings. And the judge found, going back, seeing what was done and so forth, he said, yes, this written settlement agreement does reflect the oral agreement, correctly, the oral agreement of the parties, and is binding on the parties. He didn't say, and therefore, the court now is going to retain jurisdiction to make sure that everything that's required in that settlement agreement be done. No, there's nothing left to enforce after he said the settlement agreement is proper. But counsel, there's case law that provides for that to be inferred that the trial court is going to retain jurisdiction, where the trial court participates in the settlement agreement, as Judge Hyman did in this case, in order that the settlement agreement be prepared later on. So there's case law that supports that, and they have actually cited that case law. Well, I don't think that's the situation here. I think, again, all that Judge Hyman did, all that he was asked to do, not to enforce the settlement agreement, only make a ruling whether the written settlement agreement correctly reflected the oral understanding or agreement. He did that. He did that, and then dismissed the case. There was nothing else to enforce. Okay, if the parties didn't sign the agreement or didn't abide by the agreement, sure, they can come back and say, Judge, you have the inherent policy, even after 30 days, maybe, to come in and make the parties sign this agreement as I've ruled. But he did not, he did not say, I am going to be here to enforce the settlement agreement, the terms of the settlement agreement. All he did was rule that it did reflect the understanding of the parties correctly. So I think, I think the inherent power of the court and so forth and so on really doesn't apply here. And, again, I don't think there's any law that the case law cited that says the parties in a private contract can agree, can agree to have you have a case. And, in fact, this very provision, Your Honor, this very provision was invoked in a relevant case, a related case, rather, in, oh, by the way, Judge Hammond said, this is a final order implementing, disposing of the case in its entirety. Disposing of the case, final disposing of the case. So that ends with nothing to enforce. Counsel, but the order also imposed new obligations and the new obligation was to, for the parties to sign this settlement agreement. Correct. So that was all a part of what the judge intended when the order, when the order, the dismissal order was entered, was that there would be a settlement agreement prepared and that the parties would all be signing the settlement agreement and they did. The next, the next obligation that was imposed was that there would be this parking pad and it's in the, there was negotiation regarding getting the parking pad, but they couldn't agree upon some of the material and it just kind of laid dormant for a while. And next thing that happened is that your client placed the fence on the property. But, Your Honor, that was not part of what Judge Hammond ordered. He didn't say. He ordered, he ordered the settlement agreement. Yes. The same settlement agreement that we're speaking of. Well, that's the new obligation. That's the obligation that gives the court that authority. Under several cases, NRA Marriage v. Davis, 367, ILLAP III, 908, and also under AA Midwest Rebuilders, 383 Illinois, ILLAP III at 723. Well, Your Honor, again, the, in a related case, in a related case, Myzelvis v. Vinetka, which we cited 15 CH 15447, where this provision was invoked by the defendants here, the Louis defendants, saying that Judge Atkins, before whom this case was filed, basically to prevent implementation of the terms of the agreement, the building of the easement of the driveway, defendants moved to say, wait a minute, Judge Atkins, you don't have jurisdiction because under the settlement agreement that we agreed, Judge, Judge Hyman has authority. Well, Judge Atkins denied, dismissed that motion and said that he's not persuaded that parties can contract for a specific judge to have extensive jurisdiction of the settlement agreement. And that's what we have here, Your Honor. We don't, we can't infer as to what, what Judge Hyman's final order meant, other than what it states on the surface and what he ruled, and he ruled the parties have to sign this agreement because it reflects. It doesn't follow them. And by the way, I'll be here to make sure that whatever's in the agreement, I'll be enforcing it. So, Your Honor, I don't think that any of those other cases really apply here at all, based on Judge Hyman's October 2012 order. Counsel, let me just ask you, what if after he said, this is a final order, you guys go sign it, it's a final order case, it's done. They didn't sign it. Who would have heard of them? Who would have enforced getting them to sign it? That would be something that would be enforceable before the Judge Hyman, because he said, you have to sign the order. That's it. He said, you've asked me to make a determination of this is the order that you agreed upon, settlement agreement. Okay, but he was... It is, and you should sign it, you're bound by it. But he was part of the settlement discussions. So, he said, okay, when he read the settlement agreement later, he said, okay, this says everything that we said in the discussions and negotiations. So, yeah, go sign it. So, he was enforcing it. That ended his involvement. That ended his involvement. I mean, there are cases that settle, and the case is dismissed, but you can't go back and say, well, wait a minute, Judge participated in the settlement discussions. Therefore, he has inherent power to compel enforcement. I don't think that's the law. But there's case law that says exactly that, Counsel. Not under these circumstances, I don't believe, not under this agreement. Of course, it's not going to be under this agreement, because this agreement only applies to Brace and Lessers. The agreement doesn't apply to the whole world. But again, this scenario has happened before, and this court has ruled upon these cases. Well, again, as I say, this order specifically only said that the agreement, settlement agreement, written settlement agreement, was where the parties agreed to orally, and that the parties are bound by this agreement. I don't think it follows. And therefore, if you have a dispute and dismiss the case in its entirety, final order, dismiss, I don't think it follows that. Gee, and if you have any disagreement on implementation of the settlement agreement, you can come back and have it heard by me. That basis for that is the private contract, not anything that Judge Hyman said in his order or what he addressed in his order. There was no talk. There was no talk, I don't believe, specifically. Well, I'll take that back. I just don't think that this is a situation where parties can contract to have the settlement agreement enforced in a motion in a case that was dismissed 10 years ago. Mr. Kentz, do you have any other points that you want to argue? We spent a lot of time on this. Now, let's see if you have anything else to add. Well, sure, Your Honor. Counsel, just for your sake, let me add something real quick. Obviously, you don't do domestic relations work, because sometimes those cases come back 18 years later, 20 years later. Enforcing orders. So just so you know that it happens. But I think domestic law has a different statutory background, and I don't know what those orders state. But I know that Judge Hyman's order said this is a final order disposing of the case in its entirety. But he also ordered that they complete the settlement agreement. So there was something else. Judge Walker, he did not order that. He only ordered, sign it. We find that this is what you agreed upon. Sign it. He didn't say it, and I'm going to enforce it. I'll accept that. All right. Now, the other points are the motion was denied, and then we responded to the motion to enforce. Now, what's key here is that, you're right, Judge, the pad was not built. It was not built. There was a disagreement between the lessors and Grace as to how it should be built, and so forth and so on. So the lessor built a fence, got a permit and built a fence in December of 2016 on his property line. There was no objection at that time while the fence was being built. But five months later, in May of 2017, James Blum, who's the husband of Betsy Grace, sent an email to Mr. Lesser saying, gee, I'd like to plant bushes and so forth outside your fence on my property, and could you please lower your fence by two feet? This will be a win-win situation for both of us because you will have the privacy of your fence, and I will have curb appeal in my house looking out my house. No mention of the parking pad, no mention about removing the fence. I think this is a key document, and it really shows what the intention of the parties was. And then two years later, they filed this motion in this dismissed case seeking to enforce the settlement agreement and build a parking pad, take down the fence. So basically, we think that it's been waived or abandoned anyway. But another key point I want to make, first of all, Judge Riley found there was an easement here for the parking pad, and there's no basis for that because the motion didn't ask for a declaration of easement. Paragraph 16 and Exhibit C of the settlement agreement, which is the basis of the motion, is not pouched in easement language. It does not grant an easement. An easement, to grant an easement, has to comply with the formalities of a deed. That would be the legal description, and there's nothing like that here at all. But even if there was an easement, this court has already held that restatement third of property, section 4.8, applies to this project. That happened when Mugui's initial complaint was denied for failing to state a cause of action for relocation and easement. It went up on appeal, and this court reversed, sent it back down, stating that the test that should be applied, first of all, under the restatement, which the restatement provides the servient state, like the Lessers here, can relocate the easement, the dimensions and the location, if it doesn't frustrate the purpose of the easement or lessen the easement. In fact, the Lessers did build a parking pad for two cars outside its fence, so there is parking available now. What the court said, and this is in Mugui v. Brace 395 LF 3rd 847, they said that the test under the restatement is a factual one. You have to have evidence to see if, in fact, the relocation does comply with what's required under the restatement. So the restatement is part of this case. It's been applied by this court, in fact. So there's no backing away from it, and there's no intermediary hearing here. Mr. Kent, let me just ask you a quick question regarding the easement issue. The proposed parking pad, if it had been in place, would have encroached upon whose property? Would it have been evenly divided such that each car would have been placed upon their own property, or would it have been an encroachment upon the Lessers' property? We think both, but we don't know. That's why part of our argument is that Exhibit C is really not clear for a grant of specific performance, because we don't know. Wait a minute. Wait a minute. The Lessers and Brace agreed to pay for it equally. I understand that, Judge. So that would indicate that it was half and half, right? Well, I think it indicates that, but you asked me... Why would the Lessers agree to pay for half of it if half of it wasn't on their property? No, they agreed. I agree with you, and it probably was 50-50. What I'm saying is there's nothing definitive in Exhibit C. There's no legal description or no showing where it really applies or where it should be. But you're right, Judge. They both agreed to pay for it for guest parking, and it was going to overlap their properties. There was no doubt that both properties were going to be involved. So my point on the restatement is that Judge Riley did not hold any kind of a hearing whether the relocation... As I said, there is parking now. The Lessers put parking outside their fence for two cars and offered it to Brace. So there's been a relocation, which has not frustrated the purpose of the easement. Parking is there now. Judge Riley, in her opinion... She just didn't deny or grant the motion to enforce. Didn't say anything about the restatement. It's not in her opinion. She doesn't make reference to it. But yet, she should have had a hearing, an evidentiary hearing on this to decide whether the restatement, which has been adopted by this court in this case, should be applied here, and that the Lessers' relocation does not frustrate the easement. Now, perhaps I think part of the problem might be that this was initiated by a motion rather than a new lawsuit. What should have happened here is Brace should have filed a lawsuit, separate lawsuit, breach of contract seeking specific performance. Then we could have had discovery. We didn't have any discovery here because of this motion. We could have developed a full record then and had a trial. Right now, on a motion to enforce in a case that was dismissed 10 years ago, we didn't get that. We didn't get that outcome, and we think that's improper. We also have the motion to supplement that we opposed. The clerk, Judge Riley, recognized that the Exhibit C, which was attached to the complaint and attached to the settlement agreement rather than the motion, and the motion relied on a recorded settlement agreement. It was recorded by Brace's counsel in 2014 as contemplated by the settlement agreement, and Lessers objected to the submission of a copy of Exhibit C that's not a duplicate copy of what was recorded in the recorder's office. Now, Brace then filed a motion to supplement, submitting 60 pages of documents which we think are irrelevant and not based on this lawsuit. This is a judge looking at this, and she asked specifically for one document that was a sort of a diagram of the parking pad and how it fit into the scheme of things. She couldn't read the one that was from the recorder's office because it was all blotchy. She couldn't read it either. We're going to just assume that the judge didn't bother with the other 59 pages because that's not what she asked for, and we assume that judges know what they're doing. Well, I think you're right, and I don't disagree with that, but the point is that the base could have gone to the recorder's office. Counsel, you're missing my point. Your argument on this, I think, doesn't make any sense and is irrelevant because we're going to say the judge knew what she was doing, she didn't pay attention to the other pages, and I'll just ask you to speed it up because your time is way over. Well, Your Honor, I think that's basically what I had to say. Again, as I say, the motion to dismiss should be reversed because if not, it's going to have uncertainty, and you basically do away with 1203. Okay. Thank you. Mr. Canning? Good afternoon, Your Honors. May it please the Court? I am Christopher Canning. I represent Betsy Brace. We urge this Court to affirm the order of the trial court granting the motion to enforce the settlement agreement to grant the motion to supplement and deny the motion to dismiss. Before I get into the bulk of my prepared remarks, Justice Walker, I'd like to address questions you had. Yes, you correctly understand our argument. We believe that trial court had inherent authority to enforce its orders, and I want to focus on enforce. It does not have the right to modify the order. It does not have the right to amend the order. It has the right to enforce the order. I also think it's important in telling to, excuse me, consider the parties and the trial judge at that time, Your Honorable Michael Hyman, thought so much of this provision that they made it the second numbered paragraph in the settlement agreement that Judge Hyman or applicable his calendar successor shall retain jurisdiction to enforce. Nothing more, nothing less. Again, that's why we brought the action as a motion to enforce because we believed the trial court, in this case, Judge Riley, the calendar successor, had the right to enforce the agreement. Nothing more, nothing less. To the extent there was discussion of the Mizell versus Winnetka case, Mizell versus Winnetka, although it involves many of the similar parties, is quite different because there, Mizell and Edwards, neighbors not involved in this particular part of the litigation, sought to enjoin the village of Winnetka from issuing permits related to the driveway that crosses the five homes of the parties in this case. There, Mizell and Edwards were seeking something else. They were seeking the injunction. Clearly, that did not mean enforcement and it's right that it was not in front of Judge Riley that it simply went to any other judge. If we talk about what was suggested here, that we would have to file a new complaint and then there'd be discovery and there'd be a trial, we are losing sight of what this case is about. This case is about a settlement agreement that was entered into 10 years ago. The parties and the trial judge were all together, all worked through this. You have seen the record on appeal. There are numerous references to all the work was put in. That case led to a settlement agreement. That settlement agreement then was appealed to the First District Illinois Appellate Court and in 2015, a panel of the Illinois Appellate Court specifically found there was a valid enforceable contract. In the trial court, Judge Riley pointed to this 2015 case in McGowey v. Brace that there was a valid enforceable contract and that's the underpinning of the entire order by the trial court. Let's peel back that settlement agreement, go right to paragraph 16 because in paragraph 16, that created a contractual right to a shared parking pad and that parking pad is shown on exhibit C to the agreement. Let's consider what paragraph 16 really is. Paragraph 16 evidences the parties, in this case, it's Lesser and Brace, their intention to mutually burden the other property for the benefit of their own property. I believe, Justice Walker, you were asking a question about the location. When you look at exhibit C, the settlement agreement specifically points out that it is a comprehensive scaled drawing. I can tell you the scale is one inch equals 10 feet. I can also tell you one of the issues that when you look at exhibit C, is exhibit C is a driveway layout plan. The actual driveway layout plan is much larger. When you reduce a very large document to an eight and a half by 11 document, everything becomes compressed. Everything becomes grainy. But Judge Hyman was looking at these documents because he ordered and the parties had the engineer from Double M prepare the document. The parties knew where this parking pad was going to be located. They knew the size. It was 10 foot wide, it was 20 foot deep. It was bisected by the Lesser Brace property lot. It was a benefit to both of them. It was bargained for consideration and it was a valuable property right because it ran with the land and it ran to the heirs, successors and assigns of both Brace and Lesser. We've got a contract. We've got paragraph 16. We've got exhibit C. We know what the location is. We know the size. By contract, this is what Judge Riley recognized, the valuable property right here is an easement. I want to focus on and. Mr. Ken, the question that I still want answered is whether or not the parking pad provided for one property to be a dominant property and the other to be a serving property pursuant to the easement. The driveway to a property line bisects the property and the parking pad is not directly east-west. It's a little bit more northwest-southeast. I haven't calculated the square footage, but to your point about they were going to be co-owners and pay an equal amount, I would believe that it is shared by two properties and it would be equally on the two properties. And let me also add, Justice. So in that case, then there really isn't an easement. And I know that you argue in your brief that that doesn't matter. I'm aware of that, but I want to just get to that point. So there was no easement here because I know that Judge Riley found there was an easement. And based on what you're telling us now, there may not necessarily be an easement because the parking pad sits in a situation where it's nearly equally divided upon the two properties. No, let me try to be clear, Justice Walker. What our argument is, is an easement as a matter of law is the right of privilege in the real estate of another. And the way the parking pad is drawn, if Lesser had their two cars parked there or Brace had their two cars parked there, the cars would be on, in essence, both sides of the line. So we're talking about the right created by the contract as a matter of law as an easement. This is very, very, very different than what has been cited in Lesser's brief. There is a defined term of easement, capital E. It's found at the bottom of the first page of the settlement and on the top of the second page. That easement relates to the driveway and that easement was set up in 1940 and has to do with the driveway that crosses all five properties. Right, and we're aware of that. We understand that. I think I'm asking a different question, though. We realize that that other easement has always existed and that was to benefit several properties, I believe four or five properties. I'm asking specifically about the parking pad, whether or not the agreement for the parking pad created an easement. And that easement would either be that either the Lesser's property would be a dominant estate or the Brace property would be a dominant estate. The other one would be the servant estate. And that's what we're asking right now, whether or not that was created by this agreement because it sounds like it may not have. Let me put it another way, Justice Walker. Both parties have an easement in the land of the other. And that's why I said it was mutually beneficial. So if Lesser is parking two cars, the cars are going to be both on Lesser and Brace's property. But there's only two cars, correct? I'm sorry? There's only room for two cars. If the parking pad had been completed, there would only be room for two cars, correct? No, three. One on each driveway and one on the parking pad. Three cars. Driveway, parking pad, car. Car, parking pad, car. Right? Because the driveways are adjacent to the parking pad. No? Your Honor, that's incorrect. Each house has their own driveway. Okay, all right. The parking pad would be located roughly north of Lesser's driveway and east of Brace's driveway. Okay. For lack of a better term, a side yard. Right, okay. So in between the two properties. And when you read the record, you will see why. This is compensatory parking, because when the main driveway was relocated, a little spur of parking that was in front of Lesser and Brace's homes that they used was eliminated. And therefore, as part of the consideration for this agreement, was to create this compensatory parking to benefit both Lesser and Brace. Okay. And again, I don't know if you answered my question, but two cars could have been parked on that one parking pad, correct? Yes, it was 10 wide by 20 deep. And it was really designed for, no other neighbors could use it, but if they were having a party, for example, they could use the entire parking pad, use both spots, correct? Yes, in the settlement, it also agreement talks about, for example, tradesmen coming and working. You can obviously, the FedEx drivers, the Amazon drivers, people like that. And I think it speaks of guests as well. Yes. Yeah, okay. All right, so that clarifies it. So again, though, coming back to, you're still saying that you believe that this creates an easement. As a matter of law, not as from the contract, because it creates a right to use the other's property. Lesser can use Brace's property, Brace can use Lesser's property. Right, and that's the agreement of the parties. That is the agreement. Yes. Okay, but I think we're clear now. Okay. And so when the fence is there, therefore erected, that was the violation. That was the breach of the settlement agreement. And that's why we asked for specific performance, which was because there is a valuable property right, this right in the property. And as was mentioned in the Erday case, a right like this that runs with the land can have a great deal of value upon resale. But Mr. Ken argued earlier, Mr. Kenning, that even with the fence there, there's still room for two cars to be parked there. So there's room if, for example, the Braces had the electrician at their home and they also had a carpet cleaning company at their home, there would still be room for both of those vehicles to park on this parking bed, even with the fence there. Is that not correct? That is not correct, Your Honor. What Lesser has done is, number one, created a situation by putting a fence on their property line that bisects the location of the parking bed. They now have gone on their property and put down gravel and say, here there's two spots outside of the fence. As a practical matter, Your Honor, if you pulled up in your car and you parked and your car was facing north and you got out of the driver door and the passenger door couldn't open because there wouldn't be enough room, you would be flush up against the fence. So you could have two cars that only the passenger could get out. So they have now twisted the intent of the agreement, which was to put a parking pad bisecting the two properties and serving both properties to we're going to have our fence as well as we're going to have a parking pad. And that's always, by the way, that parking pad is going to be solely on our property. So no longer will Brace have any right to that parking pad because it's not part of the settlement agreement. And I think, Your Honor, that if we went before Judge Riley and said, Judge, we want to modify the agreement or amend the agreement and the amendment under the settlement agreement needs the signatures of all the parties. We now get back into the problem we addressed at the beginning and we have the right of the court to enforce the settlement agreement because now we're modifying the settlement agreement. And I think what's also important to remember is that the citation to restatement or the citation of the 527 South Clinton case, in those situations, you don't have a clearly described location for this parcel or for the easement or for the size. And we have both of those. We've got the location, we've got the size. So this is a very different situation than we have in Clinton or the restatement. So I think we have to give effect to the intention of the parties when they sign this agreement. When in 2012, Lesser moved to enforce the agreement against Mizell and Edwards, the parties are entitled to the benefit of their bargain for consideration. And that's why the parking pad here is important. And to carry it further, your honors, by recording the settlement agreement against the property, as was required by the terms of the settlement agreement, any future owner takes the property subject to that recorded document. It is in the chain of title. And clearly the parties envisioned that and made sure that under paragraph 16, this valuable property right would run to heirs, successors, and the signs. So that we need to keep that in mind. So when we get to looking at what Judge Riley did with respect to the motion to dismiss, as well as granting motion to enforce, Judge Riley had evidence of a valid enforceable contract that contract created a valuable property right, specifically an easement where the parking pad was to be located. It was going to be an easement that benefited both Lesser and Brace. They submitted, this document exhibits, submits evidence of both the size and location of the parking pad. And that settlement agreement was breached by Lesser's placement of the fence. And therefore, in order to secure this valuable property right, the granting of the motion to enforcement and making specific performance, which was to install the parking pad is the appropriate remedy. And the court correctly decided the motion to dismiss, I'm sorry, correctly decided to grant the motion to enforce and to deny the motion to dismiss. Let me also- We're arguing though, Mr. Canning, that your client never asked for specific performance in this case. Specific performance, because it's inherent in the fact that this is real estate that's at issue. And because of the uniqueness of real estate, specific performance is the only appropriate remedy. And that's why that's the appropriate remedy as opposed to damages. Because this is not a case where you can just throw money at this. They're also arguing that your client never asked for a finding that there was an easement. There never had to be a finding of the easement because the easement was created by contract and by a matter of law. And that's what Judge Riley recognized. Let me briefly go on to the motion to supplement. Let's remember the context of the motion to supplement. In June 2020, we were three months into the COVID stay-at-home order. The trial court briefs had been submitted. The parties were awaiting oral argument. And the trial clerk emailed both counsels asking for a clear copy of Exhibit C. As I mentioned to you, Exhibit C is an 8.5 by 11 reduction of a very large driveway layout plan. And I took it upon myself, and I believe it is the duty of the lawyer to try to assist the court in getting them the information they asked so they can make the correct conclusion. And so the purpose of the motion to supplement was to put an Exhibit C, a driveway layout, in front of Judge Riley in order for the judge to come to whatever the correct conclusion was going to be. And hopefully one of the documents was a more legible copy. And therefore by pointing the court to the judicial file in McGoey v. Brace, the one going back to 2006, it was our opinion that Judge Riley correctly took judicial notice of what was in the file and correctly took notice of what was offered in the motion to supplement. Whether the court relied on that or not is not clear, but I think there's a couple of things important to note. Number one, the clerk asked both counsels if they had a clearer copy, and nothing was offered by Lesser. Number two, nothing was argued by Lesser that anything offered by Brace somehow put the drawing, sorry, put the parking pad in the incorrect location or was inaccurate. So while you may argue about whether they should be admissible or not admissible, the bottom line is there's no claim that the documents were inauthentic. And to the extent there's a claim there's a prejudice, there is no prejudice because the parking pad agreement, the parking pad itself is a benefit to Lesser. Lesser is a co-owner and a co-beneficiary of this parking pad. So if anything, it is in Lesser's interest to know the location and have the judge have the precise location for this parking pad in which they will have be a co-owner, co-beneficiary, have a property right and a right they can pass up, Lesser's can pass up to their heir, successors and assigned. So we believe the court correctly granted motion to supplement and therefore we urge you. That's a matter of the trial court's discretion anyway as to whether or not they're going to receive additional evidence. That's correct, Your Honor. And as we put in our briefs, the reason we gave a large group was so that there would also be no, so there'd be no issue with the rule of completeness. We wanted to have the context before the court can, as you pointed out earlier, look at one document and look at 60, but we did not want to be accused of just cherry picking documents and putting them before the court. So if I may, we thank the time, thank the court for your time. We believe the trial court correctly ruled on a motion to enforce and grant motion to enforce. We believe the trial court has correctly granted motion to supplement. We believe the appropriate remedy here is specific performance in the installation of the parking pad in the location, in the size agreed to by the parties 10 years ago. I'm available for any other questions you may have. Otherwise that would conclude my remarks. Thank you. Mr. Kins? Yes, thank you, Your Honor. I think questions by Judge Walker pointed out that there really is no basis for finding an easement here. And Judge Riley, I think, was incorrect in finding that there was an easement created. Mr. Canning argued, he says, no, the easement's created by law, but yet I think in his brief, he argued it's contractual as well, that it's based on what's in the contract. In fact, Mr. Canning states that there's some question whether the parking pad for the two cars that Mr. Lesser has provided on his property, whether, in fact, it's doable. Mr. Canning, excuse me, you stated to us earlier that even with the fence, or this may have been in your brief if you didn't state it to us, that the parking pad would still have been able to support two cars. Even with the fence, the parking, even with the fence, in the designated spot. Let me finish. Let me make sure you understand where I'm going. In Exhibit C? Yeah, even with the fence that the Lesser has installed, it was your position that the parking pad could have still had two cars parked on it. That's correct. This is a little different issue than I was referring to, but I think, yes, that's correct. We think even with, because the fence, only a corner of the fence extended over into what was the parking pad, like seven feet by seven feet, something like that. In other words, it doesn't occupy the entire pad so that we do think that two cars can be parked there, maybe not next to each other, but at an angle. Right, but let's back up a second then. So with the parking pad as it is, though, the parking pad was designed such that both properties would benefit from it, and actually, to some extent, both properties would be burdened by it. Correct. Okay, but once you put up your, once your client put up their fence, that decreases the burden that your client has, and it also decreases the benefit that Brace would have. To this parking pad. Wouldn't that be true? Well, Your Honor, it increases, we think that that, that would increase the burden on the lessor to have it parking like that. Right, that's what I said. It would decrease the burden on your client. That's exactly what I said. Right, it would decrease the burden on your client because their property is no longer being used for the parking pad because they've got the fence and then I believe they also have shrubbery there. Inside the fence, that's correct. Yeah, okay, all right. I think I understand where this is. But you're right, I think, Your Honor, we think that even with the fence there, that there could be parking there for two cars, so maybe not side by side. But the point is, there are questions about that easement along the side of lessor's fence that lessor installed and it's available for the brace. And as far as documenting that, I mean, that's something that was not addressed because there was no hearing on that relocation of the easement. And I think that, the fact that Mr. Canning talks about the doors couldn't be opened, those are factual inquiries. And you see, that should have been something that Judge Riley should have had an interpretation here and say whether, under the restatement, whether what you now claim to be easement that doesn't frustrate the utility of the original easement was not had. There was no hearing on that, but there should have been. But here's what's happening now is that because Judge Riley did not have a hearing, and that's why our review is de novo, if Judge Riley had had an evidentiary hearing, then we would be relying upon the fact finding made by Judge Riley. But in this case, we're looking directly at the documents ourselves and we're going to make a decision based on what we can see. It doesn't matter what Judge Riley saw because there was no evidentiary hearing. Judge Riley has no more information than we have now. She had no more information. That's correct, Your Honor, and I agree. And make a decision whether the restatement really applies here and should have been applied here. Correct. I think, let me see here. Excuse me. There is parking for two cars available in what the lessor has provided outside his fence. You're right. And it's entirely on his property. And that includes a greater burden on him. So I have no, nothing further, Your Honor. But that fence is encroaching upon the area that was designated for the parking. Correct. Which one? Where the lessors have put? The lessor's fence does encroach upon the area where there was supposed to be the parking. I think that's an issue. Okay. Thank you. There is a small part of the fence. And frankly, if that part of the fence is removed, that's what's going to take away from curb appeal for a brace because there's going to be a little triangular cutout. And again, brace, all the brace really wants is to have that fence decreased by two feet and it can stay there. And again, as I say, that May 1, 2017 email is a key document. Any other questions? That was all part of the settlement negotiation, right? That was all a part of the settlement negotiation that occurred previously. No, no, no, it was after. It was after. No, no. Right. It was after the agreement that we're reviewing today. But there was other settlement negotiation because at some point brace came to the lessors and suggested that the fence be lowered. Right. Yes. So and then there was some settlement negotiation regarding that. And that was there was a breakdown there. And what? But I won't. That's not relevant. They didn't agree to the proposal. Correct. We're familiar with the record. Justice Conklin. No, I have nothing further. Justice Walker, anything further? Nothing further. Thank you. Well, Mr. Kins, Mr. Kainey, thank you very much for your very thorough briefing and your very thorough oral arguments. We appreciate both sides. We've read the record. The briefs looked at the documents and we will take it under advisement, issue an order or an opinion forthwith. And this court is adjourned. Thank you.